IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLA ARGENTINA,<br>        **Plaintiff,** | CIVIL ACTION |
| v. | |
| BARBARA GILLETTE and CITY OF PHILADELPHIA,<br>        **Defendants.** | NO. 17-2908 |

## MEMORANDUM OPINION

Plaintiff Nicola Argentina, *pro se*, sued Defendants City of Philadelphia and Barbara Gillette alleging that he suffered racial discrimination at the South Philadelphia Older Adult Center. Pending now is Defendants' motion to dismiss the entirety of the five-count Amended Complaint for failure to state a claim. Count I asserts discrimination on the basis of race with respect to the right to contract in violation of 42 U.S.C. § 1981; Count II asserts, similarly, discrimination on the basis of race with respect to property rights in violation of 42 U.S.C. § 1982; Count III alleges a violation of Plaintiff's Equal Protection and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; Count IV alleges public accommodation discrimination in violation of 42 U.S.C. § 2000a; and, Count V asserts a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. All counts also incorporate by reference an allegation of retaliation. For the reasons that follow, all counts except Plaintiff's Section 1982 claim shall be dismissed.

I.    **Facts**

Plaintiff Nicola Argentina, a white male, was a member of the South Philadelphia Older Adult Center ("SPOAC") from approximately 2005 until May 19, 2015. On that date, SPOAC's then-Director, Defendant Gillette (who is black), denied Plaintiff's membership renewal, citing "continued non-compliance with Center Policies and Procedures" and failure "to behave in a

non-disruptive manner at all times." Plaintiff claims that his expulsion from SPOAC was "motivated by racial animus" and in retaliation for "attempts to expose Defendants' racism." Plaintiff claims that this racial animus also motivated psychological abuse, bullying, and false allegations against him.

The Amended Complaint contains no further details about the alleged discrimination. The initial Complaint, however, does contain further factual allegations.[1] Several concern police reports. One police report dated July 30, 2014, documents a minor dispute between Plaintiff and a SPOAC employee who allegedly used "forceful tactics" against Plaintiff. Another report summarizes Plaintiff's allegation that Defendant Gillette pinned him against a hallway wall on November 25, 2014. Finally, Plaintiff called police to state that when he tried to renew his membership with SPOAC for 2015 on March 10 of the same year, Defendant Gillette tore up his check. Plaintiff attached copies of his torn check and registration form to his initial Complaint.

Plaintiff's initial Complaint further annexed several handwritten notes and reviews of SPOAC by members. One of these, dated May 4, 2015, was by "Maude Lopaz" who stated that she was a member since 2001 and that there have been "misuses of power, discrimination, and favoritism" at SPOAC, but provides no details. Additionally, Plaintiff's Complaint attached several letters to his city representatives detailing his inquiries into Defendant Gillette's background and her civil service examination scores. One letter from February 15, 2014, references an "audio tape, and a police report documenting the Director's [presumably, Gillette] bigotry." Another letter dated November 20, 2012, asked Deputy Mayor Richard Negrin to

---

[1] The Court looks at Plaintiff's initial Complaint mindful of its obligation to liberally construe *pro se* pleadings. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings."); *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184 n.1 (3d Cir. 2009) ("[W]e remain mindful of our obligation to construe a *pro se* litigant's pleadings liberally.").

2

"reduce the strain caused by actions of an abusive social worker [Defendant Gillette]." Other letters summarily refer to "elder abuse," such as a letter dated January 2, 2014, to the Office of the Inspector General. That letter also states that 90 percent of the membership at SPOAC is white. And another letter from March 2014 allegedly enclosed "audio tape, and transcript[,] of a dialogue between the director who is rushing a complaining senior citizen woman hastily from the lunchroom because it is a bingo game day."

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual content pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* In other words, the factual matter pled must suggest the elements of the claim and "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010); *see also Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned . . . accusation."); *Twombly*, 550 U.S. at 556 (where an "agreement" was an element of the claim, stating "[W]e hold that stating such a claim requires a complaint with *enough factual matter* (taken as true) to suggest [an agreement]") (emphasis added).

To analyze a motion to dismiss, a court does three things: first, it outlines the elements of the claim; then, it removes any legal conclusions; and finally, it assumes as true any remaining

well-pled factual allegations and inferences reasonably drawn from them. *See Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**III. Analysis**

**A. Section 1981**

Plaintiff's Section 1981 claim will be dismissed because he fails to allege that racial animus motivated the decision not to renew his membership. Section 1981 confers upon all persons "the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The section defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). A claim under Section 1981 is established by alleging the following elements: "(1) [plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (internal quotation marks omitted). "Intent" means only intentional or purposeful discrimination. *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Here, Plaintiff's Complaints do not contain any allegations giving rise to an inference of an intent to discriminate on the basis of race. As Plaintiff's briefing indicates, his Complaint only concerns "verbal and psychological abuse and bullying," "false allegations" and "exclu[sion] . . . from the premises," and these facts do not themselves suggest any race-based intent. *See Gross v. R.T. Reynolds, Inc.*, 487 Fed. App'x 711, 716-17 (3d Cir. 2012) (finding that while Complaint suggested wrongdoing, it alleged no facts suggesting the wrongdoing was motivated by race). And, race-based, discriminatory intent cannot be inferred merely from the

4

difference in race between defendant and plaintiff. *See Abdullah v. Small Bus. Banking Dep't of Bank of America*, 532 Fed. App'x 89, 90 (3d Cir. 2013).

Admittedly, there are vague references to discrimination, such as a letter purportedly enclosing an audio tape documenting Defendant Gillette's bigotry, or an opaque reference to "discrimination" in an alleged note from another member. But such references, without more, are the type of unadorned accusations that cannot state a claim: no facts alleged describe the "discrimination," which description itself is simply a legal conclusion entitled to no assumption of truth. *See Iqbal*, 556 U.S. at 681.[2]

Plaintiff's Section 1981 retaliation claim is also foreclosed. *See Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010). The elements of a *prima facie* retaliation claim under Section 1981 are engagement in protected activity, adverse action, and a causal connection. *See id*. The "protected activity" includes complaints about activity that would establish a violation of Section 1981's guarantee. *Id*. Here, because there no allegations suggest a violation of Section 1981's guarantee, Plaintiff likewise cannot claim retaliation. *Id*. ("In a retaliation case a plaintiff must demonstrate that there had been an underlying Section 1981 violation.").

### B. Section 2000a

For the same reasons that Plaintiff's Section 1981 claim is dismissed, for failing to allege sufficient facts suggesting a racial motivation, his 42 U.S.C. § 2000a claim will be dismissed. Section 2000a prohibits discrimination in places of public accommodation "on the ground of race." 42 U.S.C. § 2000a. Plaintiff's allegations, after separating out the legal conclusions and

---

[2] Of course, *McGovern v. City of Philadelphia* suggests that no private cause of action exists against state actors pursuant to Section 1981. Instead, the action must be brought pursuant to Section 1983. However, Defendants have made no such argument here. *McGovern*, 554 F.3d 114, 121 (3d Cir. 2009).

labels of "discrimination," do not suggest that the denial of his membership renewal was "on the ground of" his race. Plaintiff's own exhibits admit that 90 percent of SPOAC's members are Caucasian, his race, and Plaintiff's complaint is devoid of allegations suggesting persons outside his race were treated differently. *See Hartman v. Bank of New York Mellon*, 650 Fed. App'x 89, 92 (3d Cir. 2016) (dismissal of Section 2000a claim proper where Plaintiff did not allege "defendants treated individuals outside her protected class different or otherwise displayed discriminatory animus.").

### C. Section 1983

Defendants claim that they are entitled to qualified immunity with respect to Plaintiff's Section 1983 claims. While Defendants cite the legal standard used to determine qualified immunity, they offer no analysis regarding Plaintiff's claims. Thus, Plaintiff's claims are not dismissed on qualified immunity grounds. *See, e.g.*, *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991) (finding under appellate rules that passing reference to an issue did not properly put it before the court).

But again, for the same reasons that Plaintiff's Section 1981 and 2000a claims are dismissed, his Equal Protection claim under Section 1983 will be dismissed. Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must allege the defendants acted under color of law, violated his federal Constitutional or statutory rights, and caused an injury. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 2017 WL 6045091 at *3 (3d Cir. 2017). Section 1983 is not a substantive source of rights, but merely a mechanism, thus the pleading standards differ according to the right allegedly

6

infringed.  For example, in the context of an equal protection claim, one element Plaintiff must allege and prove is the "existence of purposeful discrimination."  *See Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) (stating that to bring an equal protection claim under Section 1983, the plaintiff must show the existence of purposeful discrimination).  To the extent Plaintiff attempts to allege a Section 1983 violation for violation of the Equal Protection Clause for discrimination on the basis of race, the allegations in the Complaints – as noted above – do not sufficiently disclose that the Defendants acted with a racially discriminatory intent or purpose.

Reading Plaintiff's Complaint very broadly, it is conceivable that he is also attempting to allege a First Amendment retaliation claim under Section 1983.  To establish a Section 1983 retaliation claim, Plaintiff must plead "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *See Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017).  Here, Plaintiff's complaint alleges protected conduct because his communications with his representatives and other political decision-makers are the epitome of participation in the political process.  *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.").  Moreover, a right under the First Amendment exists to petition the Government for redress of grievances. *See Mirabella*, 853 F.3d at 649 (finding petition to redress environmental damage to wetlands was an exercise of First Amendment rights).  Additionally, Plaintiff alleged he was subject to an adverse action: the denial of his renewal.

7

Harder to mine from the facts alleged, though, is whether his protected conduct (petitioning the government) was a motivating factor for the adverse action (denial of membership). No allegations suggest a retaliatory motive for the non-renewal of his membership, and the letter denying his membership renewal merely cites Plaintiff's allegedly "disruptive behavior." And, nothing in Plaintiff's missives suggests that the Defendants who denied his membership knew about his protected activity, or in any other way connects the denial of his membership to the protected activity. In fact, most of Plaintiff's complaints to city officials occurred over one year before SPOAC rescinded his membership. Though one letter is dated January 2015, it was still over three months prior to the date his membership ended, and the letter simply documents a phone call, with no further detail. Thus, Plaintiff has not sufficiently pled a First Amendment retaliation claim.

### D. Section 1982

Plaintiff also claims that Defendants violated his rights protected by Section 1982, which states, "All citizens . . . have the same right . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To set forth a claim under Section 1982, the Complaint must allege: "(1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). While the analysis in the preceding sections would suggest the Section 1982 claim ought to be dismissed for failure to sufficiently allege that Defendants' actions were "because of" Plaintiff's race, Defendants do not make this point. *See, e.g.*, *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065 (3d Cir. 1991) ("failure to raise an issue in the district court constitutes a waiver of the argument").

Instead, Defendants argue only, without the benefit of citation to any case law, that the membership in SPOAC is not a "property right" that Plaintiff holds and is thus not protected by the statute.

In contrast, Plaintiff cites to three cases to support the idea that he does have a property right in SPOAC membership. *U.S. v. Brown*, 49 F.3d 1162 (6th Cir. 1995); *U.S. v. Greer*, 939 F.2d 1076 (5th Cir. 1991), *aff'd en banc*, 928 F.2d 433 (5th Cir. 1992); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974). These cases, as well as the Supreme Court's ruling in *Tillman v. Wheaton-Haven Recreation Ass'n*, could be read together to stand for the proposition that the "rights" protected by Section 1982 include property rights associated with "memberships." 410 U.S. 431, 435-37 (1973) (property right connected with a swim club offering preferences to homeowners of a particular geographical region); *see also City of Memphis v. Greene*, 451 U.S. 100, 123 (1981).

In *Tillman*, the Court determined that membership preferences to a community pool were property rights subject to protection under Section 1982. *Tillman*, 410 U.S. at 435. The Court reasoned that buyers of a home who also obtained particular preferential rights – if the home was within a particular geographical area – did have a property right protected by Section 1982. *Id*. at 436. The Court found that "when an organization links membership benefits to residency in a narrow geographical area, that decision infuses those benefits into the bundle of rights for which an individual pays when buy in or leasing within the area." *Id*. at 437.

Here, the facts of Plaintiff's Complaint, viewed through the rubric of a motion to dismiss, support a "property-linked preference" in his SPOAC membership. If he was deprived of this membership intentionally on the basis of race, that deprivation is subject to sanction under the statute and, thus, Defendants' motion will be denied on this count.

### E. State Law Claims

Plaintiff did not oppose in his brief Defendants' motion to dismiss his state law claims for failure to exhaust administrative remedies. *See Colgan v. Astrue*, 2012 WL 752083 (E.D. Pa. March 7, 2012) ("An issue is waived unless a party raises it in its opening brief."). Thus, the motion shall be granted with respect to these claims.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

**01/30/18**